## JOHN A. CONKEY CO. (VULCAN MATCH CO.) ET AL. *v.* UNITED STATES

**No. 5038.**—Invoices dated Helsingfors, Finland, July 29, 1929, etc.
Entered at Boston, Mass., August 29, 1929, etc.
Entry Nos. 3515, 7441, 6234, 20139, 12471.

(Decided October 25, 1940)

*Lamb & Lerch* (*John G. Lerch* and *David A. Golden* of counsel) for the plaintiffs; *Daniel P. McDonald*, associate counsel, in the cases in the name of Match Import Co., Inc.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Daniel I. Auster*, special attorney), for the defendant.

TILSON, Judge: The five appeals listed in schedule A, hereto attached and made a part hereof, involve the proper dutiable values of certain strike-on-box matches imported from Finland and Latvia, and entered at the port of Boston between the dates of August 29, 1929, and June 14, 1930.

At the trial of these cases at Boston counsel for the plaintiffs stated his contention as follows:

May it please the Court, in these cases we are contending there has not been a proper designation and examination of the matches in question. We are not raising any question as to the merits, or whether the foreign or other form of value should apply. We are relying solely upon an improper designation, examination, and appraisement.

In each of the reappraisements except 100599–A the designation by the collector was as follows: "Ex. ON WHF 1 in 10." In reappraisement 100517–A the merchandise consisted of 200 cases of 50 gross boxes; 900 cases of 50 gross boxes; and 200 cases of 50 gross boxes. In reappraisement 100599–A there were 100 cases, each containing 50 gross boxes. In reappraisement 100600–A there were 100 cases of 50 gross boxes each. Reappraisement 100865–A covered 100 cases of 50 gross boxes each, and reappraisement 100603–A covered 50 cases containing 50 gross boxes each.

At the trial counsel for the plaintiffs called Thomas F. Bird, an examiner of merchandise at Boston for 15 years, who testified that he acted as the examiner of the merchandise in the five cases now before me; that these matches were packed in bundles of 50 gross in a package, twelve dozen boxes, 50 gross in a case; they were first wrapped with paper wrapper, one dozen to the package, then there were 12 of these small packages wrapped in another package, and 50 of these packages in a case. It is admitted that these matches were examined by samples, and with reference to this examination the witness stated: "We open the cases and take samples. Sometimes one gross, sometimes one dozen." This witness further stated that he did not examine 1 in 10 in each of the packages on any of these invoices.

Testifying further this witness stated:

Q. For instance, in reappraisement 100865–A there is an invoice of 100 cases Iris black safety matches. It seems there are 5,000 gross under that item?—A. Yes, sir. 100 cases, each case containing 50 gross.
Q. And you saw one gross of the matches out of the 5,000 gross?—A. Yes, sir.
Q. And that is true of each item on each of these invoices?—A. Yes, sir.

Referring particularly to reappraisement 100517–A, the witness stated on cross-examination that of the 200 cases Aeroplane brand matches, 900 cases of VMCO sport matches and 200 cases of Arch safety matches, he examined by sample two or three cases of each of these brands. As to reappraisement 100599–A this witness testified

on cross examination that, of the 100 cases, he extracted and examined samples from three cases. As to reappraisement 100600–A, which covers 100 cases, the witness testified on cross-examination that he "opened two or three cases." As to reappraisement 100603–A, which covers 50 cases, the witness stated he passed upon that merchandise by examining one sample. As to reappraisement 100865–A the evidence shows that of the 100 cases only samples from three or four cases were examined.

In view of the contention of counsel for the defenꜱant that the merchandise in these appeals was such as is, by commercial usage, bought and sold by sample, counsel for the plaintiffs offered the testimony of one witness to show that this merchandise was not by commercial usage bought and sold by sample, and counsel for the defendant offered the testimony of one witness to rebut that offered by plaintiffs on this point. From an examination of the evidence offered on this point and a consideration of the applicable authorities, it is clear to me that this merchandise is not by commercial usage bought and sold by sample, but, for the reasons hereinafter stated, I do not consider that the case turns on this point, and for that reason no further discussion of this evidence need be had here.

Section 499 of the Tariff Act of 1930, so far as here pertinent, reads as follows:

* * * The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities to be sent to the public stores or other places for such purpose. Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated unless the Secretary of the Treasury, from the character and description of the merchandise, is of the opinion that the examination of a less proportion of packages will amply protect the revenue and by *special regulation* permit a less number of packages to be examined. * * * [Italics mine.]

Article 688 of the Customs Regulations of 1923, which is here applicable, provides that matches and certain other specified articles will be examined at the importers' stores or other suitable places, and not at the appraiser's stores.

Article 692 of said regulations provides as follows:

The appraiser may make appraisement on samples of such merchandise as is, by commercial usage, bought and sold by sample.

The *samples shall be selected* by a customs sampler, or other authorized customs officer, *from the packages designated by the collector for examination*, and shall be properly marked to insure identification. [Italics mine.]

With reference to the designation by the collector of merchandise for examination, Judge Dallinger, in the case of *Union Importing Co.* v. *United States*, Reap. Dec. 4558, specifically held that a rubber stamp notation on the summary sheet reading: "bal. 1 in 10 on wharf" does

not constitute designation within the meaning of section 499 of the Tariff Act of 1930, and the customs regulations promulgated thereunder. I feel that the above holding is sound, and I must therefore hold on the facts in these cases that the designation by the collector does not constitute a legal designation under said section 499. Since the merchandise in these cases was imported in packages there appears to be no reason why the collector should not have designated the same by packages or package numbers, thereby definitely fixing those packages which he considered necessary to have the appraiser examine, rather than leave it so indefinite that the appraiser could select whatever packages he chose to examine. Section 499 makes it the duty of the collector, not the appraiser, to designate the packages for examination. A designation such as that in these cases amounts to no designation at all, but is, in effect, an attempt on the part of the collector to transfer to the appraiser the mandatory duty of designating the packages for examination which the Congress has placed upon the collector. This cannot be done.

Since counsel have not made the contention that said article 692 is invalid, for any reason, I shall accept the same for the purposes of this decision as a valid regulation. It will be noted, however, that said regulation specifically provides that the samples upon which the examination is to be based "shall be selected  *  *  *  from the packages designated by the collector for examination." In none of these appeals do we have any packages designated by the collector for examination. This being true, how can the sampler select samples from the packages designated by the collector? Since no packages have been designated by the collector for examination, the sampler *cannot* select samples from the packages which have been designated by the collector for examination.

From what has been shown it is clear that the appraisements in these cases should be held to be null and void *ab initio*, but I wish to examine another phase of this case a little further and demonstrate another reason why said appraisements will have to be held null and void.

If it were conceded that the matches in these cases were, by commercial usage, bought and sold by sample and, therefore, subject to appraisement by sample, I am faced with the mandatory provision in said section 499 that, in order to have a legal appraisement, not less than 1 package of every invoice and not less than 1 package of every 10 packages of merchandise *shall be opened and examined* for the purpose of appraisement. Of course, in examining merchandise by sample, it is not necessary to examine all of the merchandise in the entire number of packages so designated by the collector, but such an examination may be made by opening and extracting samples from each of the packages designated by the collector for examination,

subject to the proviso, of course, that not less than 1 package of every invoice and not less than 1 package of every 10 packages of merchandise shall be opened and samples taken therefrom.

The evidence before me stands without contradiction that in not one of these cases were more than four cases opened and samples taken therefrom for the purpose of examination and appraisement. This does not constitute an examination *by sample* of not less than one package of every invoice and not less than 1 package of every 10 packages of the merchandise, since no one of the invoices covers less than fifty cases. The law is not satisfied where there are from 50 to thirteen hundred cases on five different invoices and only three or four of any of the cases on any of the invoices are opened and examined by sample, even though the merchandise be such as is, by commercial usage, bought and sold by sample. The fact that in certain cases a legal appraisement may be had upon the examination of *samples* of the merchandise, does not relieve the appraiser from opening at least 1 package of every invoice and 1 package of every 10 packages of merchandise and extracting therefrom and examining sufficient samples. Under the regulations it might be discretionary with the appraiser as to the number of samples or quantity of merchandise taken from each package designated by the collector, for the purpose of examination, but it is not discretionary with the appraiser to open and take samples from a less number of packages than is required under the mandatory provisions of said section 499.

Counsel for the defendant herein relies to some extent on long-continued practice, and also complains that the importer will be unjustly enriched if the designation and examination are declared null and void. A complete answer to the first contention is found in the case of *United States* v. *Northam Trading Corp.*, Reap. Dec. 4537, from which I quote the following:

Counsel for appellant also insists that since the record shows that the designation and examination of the merchandise in this case conforms to long-continued practice and also to the customs regulations that the trial court erred in declaring the appraisements null and void. Long-continued practice, even if clothed with an element of equity and practicality, cannot nullify the plain mandate contained in said section 499 with respect to the proper examination of the prescribed number of packages. If the customs regulations prescribe any method of examination of merchandise for appraisement purposes which permits the opening and examining of less than one package of every invoice and less than one package of every ten packages of merchandise, except under very specific and limited enumerated conditions, then such regulations to that extent supersede the provisions of said section 499, and to that extent are null and void. The long list of authorities cited by counsel for the Government in support of this contention do not hold to the contrary. To sustain the contention of counsel for the Government on this point would be an attempt to authorize the Secretary of the Treasury to rewrite any administrative provision of the tariff act to suit his pleasure. This we decline to attempt to do.

With reference to the argument as to unjust enrichment, this case does not support or warrant such argument. In the first place I fail to find any unjust enrichment of anyone connected with this case, and if there be any such, it would be attributable directly to the action of the appraising officials in failing to carry out the plain mandate of the law. If counsel for the Government is interested in enriching the coffers of the Treasury of the United States, a little more attention to, and a stricter compliance with the law with reference to designation, examination, and appraisement by those charged with these duties would be a great deal more effective than all the argument regarding unjust enrichment.

After a careful examination of all the evidence before me and a consideration of the applicable authorities, I find that the mandatory provisions of section 499 of the Tariff Act of 1922 and of the customs regulations prescribed thereunder as to designation, examination, and appraisement were not complied with in the instant case, and that therefore the appraisement in each instance must be and the same is hereby held to be null and void *ab initio*. *United States* v. *Steffan & Sons*, 18 C. C. P. A. 455; *United States* v. *Davis*, 20 C. C. P. A. 305; *United States* v. *Gilson Bros.*, 20 C. C. P. A. 117; *Tower* v. *United States*, 21 C. C. P. A. 417; *United States* v. *Beermaker*, 23 C. C. P. A. 48; *United States* v. *Boston Paper Board Co.*, 23 C. C. P. A. 372; *United States* v. *Tower*, 24 C. C. P. A. 456; *Canadian Pacific Railway* v. *United States*, T. D. 49023; *Tower* v. *United States*, T. D. 49003, and *United States* v. *Northam Trading Corp.*, Reap. Dec. 4537. Judgment will be rendered accordingly.